IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS

| | | |
|---|---|---|
| E. Tobin Meisenheimer<br>Plaintiff, | )<br>)<br>)<br>) | Case No. |
| v. | )<br>)<br>) | COMPLAINT FOR TRADEMARK INFRINGEMENT |
| Sammons Retirement Solutions Inc.,<br>Defendant. | )<br>)<br>)<br>) | Jury Demand |

## Complaint

Plaintiff, E. Tobin (Toby) Meisenheimer, through his attorney, Genna S. Hibbs, brings the present action against Defendant, Sammons Retirement Solutions Inc., and alleges as follows:

### Parties

1. Plaintiff, Toby Meisenheimer, is a resident of Winfield, Illinois, with offices in Warrenville, IL, he has more than seventeen (17) years of financial and retirement planning experience. Plaintiff manages approximately $150 million in investments for approximately 400 clients across the U.S., and provides a unique brand of retirement planning marketing materials to clients and other retirement advisors.

2. Defendant, Sammons Retirement Solutions Inc., ("SRS"), is a privately-held, Delaware-based corporation and a wholly-owned subsidiary of Sammons Financial Group, Inc., ("Sammon's"), also a privately-held Delaware-based corporation, with principal place of business in Des Moines, Iowa. Defendant provides financial and retirement planning services as

well as various marketing material to clients and other financial and retirement planners across the U.S. SRS announced over $3 billion dollars in sales for 2015.

## Jurisdiction and Venue

3. This Court has original subject matter jurisdiction over the claims in this action pursuant to provisions of 15 U.S.C. §§1051 - 1129; 28 U.S.C. §1331; 28 U.S.C. §1338(a) and (b); and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

4. This Court has personal jurisdiction over the Defendant as they continuously and systematically sell financial and retirement planning services and products to customers located in the State of Illinois, advertise and promotes its services and products to customers and potential customers in the State of Illinois, and Defendant's actions harm Plaintiff's business in Illinois under the Illinois Long Arm Statute 735 ILCS 5/2-209(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(c) because, upon information and belief, all parties to this action do business in this district, and a substantial part of the events giving rise to the subject claims arose in this district.

## IRS Age 59.5 Rule and Common Usage

6. The age of 59.5 became significant at least over forty years ago with the implementation of ERISA. Section 408(f) of ERISA, titled "Additional Tax on Certain Amounts Included in Gross Income Before Age 59½" describes the triggering event as when "such individual attains age 59½". *See Exhibit A.*

7. The IRS refers to the triggering event to reduce IRA withdrawal penalties as reaching 59.5 years of age. *See Exhibit B.*

8. The financial planning, retirement investment, and tax consulting industries have almost exclusively referred to the IRS's 59½ rule in its descriptive sense when transmitting information or advertising to the public.

9. In a 1996 New York Times, article, the rule is described as "the earliest you can begin tapping your I.R.A. is at age 59 1/2", or "[a]fter age 59 1/2." *See Exhibit C.*

10. More recently in Forbes, an article speaks to the common language usage: "[m]ost Americans that are lucky enough to have money stashed away for retirement in an Individual Retirement Account are probably familiar with the age 59.5 rule, whereby a distribution from the IRA before that age will trigger not only taxes on the amount withdrawn, but a 10% penalty on early distributions." *See Exhibit D.*

11. A cursory Google search shows that the term '59.5 rule' is strongly associated with describing the IRS triggering event by newspapers, financial/retirement planning companies, and IRS help sites. *See Exhibit E.*

12. While it is easy to find regular use of the age 59.5 rule descriptively, it is entirely uncommon for that rule to be used in conjunction with the concept of happy birthdays or half-birthdays. *See Exhibit F.* Age 59.5 Rule is the descriptive form, not Happy 59 ½ Birthday.

13. In fact, a Google search of the trademarked phrase shows that relevant use is dominated by the Plaintiff. *See Exhibit G.*

<u>Happy Half Birthday and Common Usage</u>

14. People commonly wish each other a "Happy Birthday" every year on the day and month similar to the day and month to which they were born, and celebrate becoming a year older.

15. There are no entries for "half-birthday", "half birthday", and "birthday, half" in the following publications: Dictionary of Word & Phrase Origins, Vol I, II, and III; The Facts on File Encyclopedia of Word & Phrase Origins, 3rd ed; The American Heritage Dictionary, 5th ed (2011); Merriam-Webster's Dictionary of Basic English (2009); The Oxford English Dictionary, 2nd ed (1989); Webster's New World College Dictionary, 5th ed (2014); Garner's Modern American Usage, 3rd ed (2009); Dictionary of American Slang, 2nd supplemented ed (1975); Random House Historical Dictionary of American Slang, vol II (1997); Merriam-Webster's Collegiate Dictionary, 11th ed (2004); and Webster's Ninth New Collegiate Dictionary (1989).

16. Online, Wikipedia defines "half birthday" as "a day approximately six months before or after the anniversary of a person's birth. It is sometimes marked by people whose birthday falls near major holidays, the celebration of which may overshadow celebration of the birthday. It may also be marked by students whose birthday does not occur during the regular school year; a half-birthday allows a celebration with friends at school." *See Exhibit H.*

17. An article on the Betty Crocker website discussing half-birthday party ideas, clearly describes the event as one generally provided to children, as it "can be a perfect way to lift the spirits of a kid who's having a tough time… [Or] is missing a friend who moved away." *See Exhibit I.* The final paragraph supports that half-birthdays are unique and whimsical celebrations "[a]s much fun as half-days are for kids, they can be even better for grownups looking for an excuse to get together and indulge." *Id.*

<u>Plaintiff and the Mark</u>

18. Toby Meisenheimer has been an advisor for retirement investment and financial planning for the last seventeen (17) years.

19. Mr. Meisenheimer created a fun and fanciful marketing brand to create retirement and financial planning conversations with clients and potential clients regarding the IRS age 59.5 rule by incongruously combining the rule with the childish and whimsical concept of half-birthdays.

20. The Plaintiff filed his intent to use application for the "HAPPY 59 1/2 BIRTHDAY" mark with the USPTO in 25 February 2007. *See Exhibit* J.

21. On 25 September 2008, the USPTO issued a Notice of Acceptance of Statement of Use for the trademark "HAPPY 59 1/2 BIRTHDAY". *See Exhibit J.*

22. The mark issued on 28 October 2008, with no restrictions or disclaimers, as federal registered service mark no. 3524855, HAPPY 59 1/2 BIRTHDAY. *See Exhibit* J.

23. The "HAPPY 59 1/2 BIRTHDAY" mark attained incontestable status on 28 October 2008. *See Exhibit J.*

24. Plaintiff has successfully used his unique retirement investment marketing to remind his clients of the importance of the IRS age 59.5 rule in a fun way.

25. Plaintiff also sells his financial and retirement investment marketing resources to other financial planners.

26. The Plaintiff's mark is so unique that it is believed to be the only IRS 59.5 age rule-themed federal trademark to date. *See Exhibit K.*

27. Mr. Meisenheimer's "HAPPY 59 ½ BIRTHDAY" cards cultivate goodwill and brand recognition with recipients of the trademarked cards and advisors who utilize them for their own services.

28. When the Plaintiff is networking with other financial planners, he will recommend his marketing products as a fun approach to retirement conversations with investment clients.

29. It is not uncommon in the retirement planning industry for financial advisors to sell or lease their successful marketing brands to other financial planners. *See Exhibit L.*

### Defendants and Infringing Action

30. According to the Sammons website, Defendant SRS has been a member of Sammons Financial Group since 2012, which also includes Midland National Life Insurance Company. *See Exhibit M.*

31. Defendant SRS complements Sammons' "existing business by expanding its solutions to include mutual fund IRAs and annuities for sale through independent broker-dealers and financial professionals." *See Exhibit M.*

32. Defendant provides financial planning products to financial advisors as a marketing device to encourage investment of client funds through the Sammons network.

33. It is believed that Defendant provides a suite of marketing products to financial professionals and their clients in promotion of their services.

34. Successful marketing product are important to SRS to increase investments by independent broker dealers and financial professionals in SRS and Sammons investment services.

35. In 2014, Plaintiff presented at the LaSalle St. Securities, LLC 2014 Leaders' Conference at JW Marriott in Phoenix, AZ, and also promoted his "HAPPY 59 ½ BIRTHDAY" brand cards and products.

36. Representatives of Defendant's sister-company, Midland National, were in attendance at the Leaders' Conference and had opportunity to learn about Mr. Meisenheimer's HAPPY 59 1/2 BIRTHDAY brand.

37. Less than a year later, and at least as early as the summer of 2015, Defendant SRS has issued at least one series of cards containing the "HAPPY 59 ½ BIRTHDAY" mark.

38. The front of the card is printed with an image of a residential gable, split in half vertically. One half of the gable is painted and the other half is in need of painting. The sentence "Why do things HALF way?" appears above the gable image. On the inside top half of the card, two lines of text are printed in bold: "Have a Completely" and "Happy 59 ½ Birthday!" respectively. *See Exhibit* N.

39. Accompanying materials to the card contain letterhead for Sammons, and state: "We hope the 'half birthday' strategy proves to be a successful tool in your office's communication strategy. It can help you reach out to valued clients and prospects at unique points when your assistance may be of particular importance to their financial plans." *See Exhibit* N.

40. The materials also state: "If you are facing a hard-to-close case or want more information on how the 'half birthday' strategy can be used as a conversation started, please call[.]" *See Exhibit* N.

41. The Plaintiff's "HAPPY 59 ½ BIRTHDAY" mark is being copied exactly in the card materials, the words are prominently capitalized and underlined, and the accompanying materials identify the use of the mark as a "half birthday strategy."

42. The Plaintiff became aware of the infringing use when a fellow financial professional sent him the Defendant's marketing materials and congratulated him on having licensed his brand to such a large investment provider.

43. On 1 September 2015, Plaintiff sent a demand letter to the Defendant, through counsel.

44. The parties exchanged letters regarding the situation and in January 2016 the communications concluded without resolution.

45. On 14 April 2016, SRS received the IRI Marketing Innovation Award for Marketing that "is designed to help independent financial professionals create dialogues with clients". *See Exhibit O.*

46. Defendant also "has been the recipient of numerous awards recently" for their marketing, including the 2016 Marketing Innovation Award, 2015 American Marketing Association NOVA Award for Direct Marketing, and was a finalist for 2016 Market Award "Most Creative" and "Content is King". *See Exhibit O.*

47. In 2016, Defendant announced "record-breaking growth in 2015 and has surpassed $3 billion in total sales". *See Exhibit O.*

## Count I: Infringement of Registered Trademark

## 15 U.S.C. §1114(a)

48. Plaintiff owns incontestable registered service mark "HAPPY 59 ½ BIRTHDAY" which, under section 33 of the Lanham Act (§1115), creates prima facie evidence of validity of the registered mark, the registration, ownership, and exclusive rights.

49. Defendant copied the mark "HAPPY 59 ½ BIRTHDAY" mark exactly in card materials that are distributed to the same markets of customers and clients.

50. Defendant used and continues to use the mark "HAPPY 59 ½ BIRTHDAY" in commerce, in connection with the advertising, offering for sale, distribution, and sale of their services.

51. Defendant's use of "HAPPY 59 ½ BIRTHDAY" is a reproduction, counterfeit, or colorable imitation of Plaintiff's mark in connection with Defendants' services.

52. Defendant's use is likely to cause confusion, or to cause mistake, or to deceive the public, in violation of the Lanham Act 15 U.S.C. §1114.

53. Defendant's use harm the Plaintiff and capitalizes on the Plaintiff's goodwill.

54. Defendant's violation of the Lanham Act, 15 U.S.C. §1114 makes Defendants liable to Plaintiff in civil action.

### Count II: Unfair Competition
### 15 U.S.C. §1125(a)

55. In connection with Defendant's services, Defendant uses the mark "HAPPY 59 ½ BIRTHDAY" in commerce in connection with the sale, offering for sale, distribution, or advertising of Defendant services.

56. Defendant words, terms, names, symbols, and devices are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association with Plaintiff and Plaintiff's "HAPPY 59 ½ BIRTHDAY" services, and as to the origin, sponsorship, or approval of their goods and services by Plaintiff.

### Count III: Illinois Unfair Competition
### 765 ILCS 1036/60(a)

57. As a result of their unauthorized use, Defendant use is likely to cause confusion or mistake or to deceive the public, in violation of the common law of the State of Illinois, as to the source of origin of such services.

58. Defendant is likely to mislead and to continue to mislead prospective consumers as to an affiliation, connection, or association of Defendant or Defendant's services.

### Count IV: Illinois Deceptive Trade Practices
### 815 ILCS 510/3

59. Defendant has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their services.

60. In appropriating the Plaintiff's mark for without license, Defendant has disparaged the services and business of the Plaintiff by false or misleading representation of fact.

## Prayer for Relief

61. Plaintiff prays to recover an appropriate portion of Defendant's profits for Defendant's infringing uses and cost of bringing this action.

62. Plaintiff prays for injunctive relief from Defendant's further infringing uses.

63. Plaintiff prays to recover up to treble damages due to Defendant willfully infringing the HAPPY 59 1/2 BIRTHDAY mark.

64. Plaintiff also prays for any other relief that this Court finds appropriate to remedy the Plaintiff and protect his rights.

## Jury Demand

65. Plaintiff demands a trial by jury on all matters and issues triable by jury in this action.

Respectfully Submitted on 14 July 2016,

Genna S. Hibbs (IL Bar no. 6306165)
Attorney for Plaintiff
Hibbs Law, LLC
226 W Judd St. Suite B
Woodstock, IL 60098
gh@hibbslaw.com